IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ALEXANDER VILLA, | ) | Case No. 1:25-cv-1968 |
| *Plaintiff*, | ) ) ) | |
| | ) | Honorable Matthew F. Kennelly |
| v. | ) | United States District Judge |
| | ) | |
| ANTHONY NORADIN, et al. | ) ) | |
| *Defendants*. | ) ) ) | |

**PLAINTIFF VILLA'S RESPONSE TO**
**DEFENDANT CITY'S MOTION FOR PROTECTIVE ORDER**

During the pendency of Plaintiff Villa's post-conviction proceedings, the City of Chicago ("City") and the Chicago Police Department ("CPD") produced millions of pages of documents in response to Plaintiff's subpoenas. The City and CPD produced these emails wholesale—without a protective order initially in place and without asserting any privilege over the responsive documents. These documents remain in Plaintiff's possession and are unquestionably relevant to his claims in this case, as well as the claims of his co-Plaintiffs. Plaintiff intended to produce these documents consistent with his discovery obligations, but Defendant City now attempts to turn back time and limit Plaintiff's ability to use documents that the City itself produced to him. This nonsensical attempt to improperly limit discovery should be denied.

**BACKGROUND**

During Plaintiff's post-trial proceedings, Plaintiff issued approximately 191 subpoenas to CPD. In response to those subpoenas, CPD produced hundreds of thousands of documents—primarily emails and their attachments—to Plaintiff. These documents were produced in the

criminal case without a protective order. In fact, a protective order was not entered in that case until at least a year after Plaintiff's first subpoena and approximately eight months after the CPD began producing responsive Plaintiff documents.[1] These documents were not marked confidential and CPD asserted no privilege over them at the time it produced them. Nor did the CPD ever attempt to assert privilege over those documents at any time during the criminal litigation. [2]

Before Plaintiff Villa filed his civil lawsuit, the parties in Clay (Case No. 1:23-cv-16799) and Colon (Case No. 1:23-cv-16798) discussed how to obtain the documents produced in Villa's criminal case given the protective order that had been entered by the state court. The parties reached an agreement that Defendant City would re-produce the documents it had produced to Plaintiff Villa in his criminal proceedings for attorneys' eyes only.[3] The state court's protective order in Plaintiff Villa's criminal case has now been amended, following the dismissal of charges

---

[1] Defendant City's motion mistakenly states that "CPD produced these emails and attachments in native format to Ms. Blagg [Plaintiff Villa's counsel] in a very short time frame under the constraints of a strong protective order, without a robust review of content." Dkt. 135 at 2. But the protective order in the criminal case was not issued until well after the CPD began producing responsive documents.

[2] Defendant City's motion also mistakenly states that "[u]pon information and belief, this lack of marking [the documents as confidential] was due to the substantial burden and production delays that would have resulted from affixing confidentiality labels to such a large volume of material balanced against the fact that the documents were being produced subject to a protective order in the Villa criminal case." Dkt. 135 at 3. Again, the protective order was not issued until well after the CPD began producing responsive documents, and no discussion with respect to confidentiality markings was had at the time of the production. (It is also not clear why the City would have to represent this fact upon information and belief in its motion, given that it is the party who produced the documents.)

[3] The Court has made clear that this "attorneys' eyes only" agreement is "insane" and "doesn't exist anymore." Ex. 1 at 9:11-17.

against Plaintiff Villa, to permit the production of materials from the criminal case in these civil cases. Ex. 2.

Following Plaintiff Villa's filing of this lawsuit, he produced over 110,000 pages of responsive, non-privileged documents in his possession.[4] But Villa withheld CPD's emails and attachments in his possession while the City conferred with Villa about those documents. On June 24 and June 25, 2025, Defendant City produced indexes, reflecting 287,355 documents, which categorized the emails it believed had been produced to Plaintiff in his underlying criminal case. Ex. 3. Defendant City then provided "load files" for the parties to use in document management software and instructed that the parties were to use the index and load file to make specific requests about which documents the parties wanted Defendant City to image, bates, and produce in this case, indicating that it would be too burdensome to produce all of the documents in its possession.[5] Ex. 4. Defendant City also asserted a privilege over a set of documents—numbering over three thousand—that it had already produced to Plaintiff Villa in his criminal case. Ex. 5. Whether Plaintiff will move to compel the City to simply produce these documents is not yet ripe for the Court's consideration.

Meanwhile, Plaintiff Villa, who has consistently said he would produce all responsive documents in his possession, Ex. 6, began the process of preparing for production those

---

[4] Some of these documents have been marked confidential and clawed back, pending the ongoing Title III dispute. Dkts. 122, 130, 138.

[5] Defendant City states that only its proposed process will be appropriately streamlined and efficient for all the parties. But requiring each of the parties to identify specific documents for production, out of a set of nearly 300,000, is much less efficient than simply producing all responsive documents, which is what Plaintiff intends to do, and which is what Plaintiff will ask the City to do, with guidance from this Court as necessary.

documents he had received from the City in criminal litigation.[6] During this process, the third-party vendor working with Plaintiff to prepare the production indicated that there are over half a million documents, totaling almost three million pages, consisting of emails and attachments, all of which were produced to Plaintiff during his criminal case. Plaintiff Villa repeatedly informed Defendant City of his intent to simply produce the relevant documents in his possession, and he agreed to initially produce them subject to this Court's protective order where appropriate. Ex. 6. Defendant City asked for Villa not to make that production until it had filed the pending motion for a protective order, and Villa agreed. Ex. 7.

## ARGUMENT

This Court should permit Plaintiff Villa to disclose the relevant documents in his possession. Indeed, it is indicative of how upside-down Defendant City's motion is that Plaintiff has to even make such a request. As an initial matter, these documents are already in Plaintiff's possession and are undisputably relevant. These documents provide a wealth of information about Defendant Officers' otherwise undocumented investigative activities, the lengths that Defendants went to in order to frame Plaintiff Villa, Clay, and Colon, information about witness interviews, otherwise undocumented alternative suspects, forensic evidence analysis, and other relevant evidence that the parties will need throughout discovery in this case.

Defendant City, via CPD, produced these nearly three million pages of documents to Plaintiff Villa in his criminal case, without asserting any privilege, without a protective order in place, and without declaring any kind of confidentiality. Any privilege or other restriction on the

---

[6] Excluded from this set of documents are the Title III documents, which Villa identified using search terms designed to capture Title III documents, and which Villa is withholding pending resolution of that related issue. Dkt. 138 at 2 n. 1.

dissemination of these documents should have been asserted, applied, or adjudicated at the time that Defendant City decided to disclose the documents to Plaintiff Villa in his criminal proceeding. This never happened. *See, e.g.*, *Hipschman v. County of San Diego*, 742 F. Supp. 3d 1123, 1134 (S.D. Cal. 2024) ("The Court finds that the County expressly waived these privileges when it voluntarily disclosed the documents in previous cases without being ordered to do so by a court."); *Caliber One Indem. Co. v. Millard Chicago Window Cleaning, LLC*, No. 04 C 2424, 2006 WL 573895, at *3 (N.D. Ill. Mar. 6, 2006); *Ritacca v. Abbott Laboratories*, 203 F.R.D. 332, 335–36 (N.D. Ill. 2001) (waiver of privilege when party failed to invoke privilege for months even though the record suggested that the defendant already knew about the existence of the documents at issue when the motion was filed).

      This is not a situation in which privileged documents were inadvertently produced. Instead, Defendant City produced these documents—without objection or protection—in response to Plaintiff Villa's subpoenas in his criminal case. Any privilege is therefore waived. *See Equity Residential v. Kendall Risk Management, Inc.*, 246 F.R.D. 557, 567 (N.D. Ill. Nov. 16, 2007) (because a party had "previously disclosed" documents those documents "no longer remained confidential, and are thus no longer privileged"); *Baxter Travenol Laboratories, Inc. v. Abbott Laboratories*, 1987 WL 12919 (N.D. Ill. 1987) ("Where [] confidentiality of a document is not maintained, the privilege is lost"). Regardless, the City has never argued that its production of these documents in the criminal case was inadvertent, and so even if there were such an argument to make, it was forfeited first in the criminal case and again in this case.

      In its motion, Defendant City now belatedly argues that it should be allowed not only to assert privileges over documents it long-ago produced, without restriction or objection, but also that it should be permitted to control how and whether Plaintiff Villa produces the relevant

documents in his own possession. It makes this exceptional request without providing any legal basis. Accordingly, the request should be denied outright, without the need for analysis.

Defendant City complains that "Plaintiff proposes to produce everything received from Ms. Blagg without regard to privilege, confidentiality, or subject matter." Dkt. 135 at 7.[7] This is not true. Plaintiff has agreed to wait for what he views as a frivolous motion for a protective order to be adjudicated. And he has agreed to initially produce the documents in his possession under this Court's protective order, to the extent the protective order allows for such treatment. Ex. 2. Moreover, Plaintiff has sequestered documents he has identified as potentially covered by Title III, so that the government had the opportunity to intervene and make its position known. Plaintiff Villa has been maximally careful about how he has proceeded. However, at the end of the day, as described above, none of the documents in his possession are privileged or otherwise protected—they were produced to him without limitation in his criminal case. As a result, the Federal Rules of Civil Procedure require Villa to produce those documents, and there is no basis to order that they should not be produced.[8]

---

[7] Defendant City also complains that Plaintiff Villa's production will be "duplicative" but this is not a basis to refrain from production: 1) the parties' productions are obviously not entirely duplicative, as revealed by the disparate number of documents and pages in each production; 2) there is no rule that parties cannot or should not produce the same documents, and in fact, this routinely occurs; and 3) Plaintiff Villa is unaware of any instruction from this Court not to produce duplicative documents.

[8] Defendant City also repeatedly states throughout its motion that some of the emails produced in Villa's underlying criminal case are irrelevant. But these emails, by virtue of being produced in Villa's criminal case, are categorically relevant. At least, the City determined they were relevant while responding to subpoenas in the criminal case. At minimum, it is not for Defendant City to decide for all the parties which emails are relevant and which are not, and it certainly cannot argue that Villa cannot produce documents on that basis.

If Defendant City had a legally supported reason to assert privilege (and it is extremely unlikely that it would, given that it did not preserve any claim of privilege during the criminal case), it can make such arguments on a document-by-document basis after Villa's production of documents. Similarly, following Plaintiff Villa's production, Defendant City is free to assert that certain documents require a confidential designation, pursuant to the joint protective order entered in this case. Dkt. 138-2; *Motorola Solutions, Inc. v. Hytera Communications Corp.*, 367 F.Supp.3d 813, 817 (N.D. Ill. Mar. 19, 2019) ("Simply put, indiscriminate designations of confidentiality are not permissible."); *Pearlshire Capital Group, LLC v. Zaid*, 490 F.Supp.3d 1299, 1307 (N.D. Ill. Sep. 29, 2020) ("Blanket or sweeping claims of privilege are impermissible in all contexts"); *Plair v. E.J. Brach & Sons, Inc.*, 1996 WL 67975 at *3 (N.D. Ill. Feb. 15, 1996) ("blanket protective orders permitting all documents to be designated confidential are generally not appropriate"). In short, if any of the arguments in the City's motion have any force at all, then those arguments can be made after the production of documents has occurred, and the City can point to particular documents over which it claimed privilege or protection in the criminal case, instead of asserting that Villa should be stopped *ex ante* from producing millions of pages of relevant discovery based on a vague notion that the City is also in possession of the same documents.

For the foregoing reasons, Defendant City's motion for a protective order should be denied and Plaintiff Villa should be permitted to expeditiously proceed with his production.

Dated: July 29, 2025                    Respectfully submitted,

                                            **ALEXANDER VILLA**

                                            BY:   /s/ Jordan Poole
                                                          *One of Plaintiff's Attorneys*

8

Jon Loevy
Steve Art
Anand Swaminathan
Brian Morris
Jordan Poole
LOEVY & LOEVY
311 N. Aberdeen, 3rd Floor
Chicago, Illinois 60607
(312) 243-5900
poole@loevy.com

Jennifer Blagg
Eric Bisby
1509 W. Berwyn Ave. Suite 201E
Chicago, Illinois 60640
(773) 859-0081
jennifer@blagglaw.net

8

## CERTIFICATE OF SERVICE

I, Jordan Poole, an attorney, certify that on July 29, 2025, I served the foregoing using the Court's CM/ECF system, which effected service on all counsel of record.

/s/ Jordan Poole
*One of Plaintiff's Attorneys*