**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **EDGARDO COLON,** | ) ) ) | |
| Plaintiff, | ) ) | Case No.: 23-CV-16798 |
| v. | ) ) ) | The Honorable Matthew F. Kennelly |
| **ANTHONY F. NORADIN, et al.** | ) ) ) | |
| Defendants. | ) | |

| | | |
|---|---|---|
| **TYRONE CLAY,** | ) ) ) | |
| Plaintiff, | ) ) | Case No.: 23-CV-16799 |
| v. | ) ) | The Honorable Matthew F. Kennelly |
| **ANTHONY F. NORADIN, et al.** | ) ) ) | |
| Defendants. | ) | |

| | | |
|---|---|---|
| **ALEXANDER VILLA,** | ) ) ) | |
| Plaintiff, | ) ) | Case No.: 25-CV-01968 |
| v. | ) ) | The Honorable Matthew F. Kennelly |
| **ANTHONY F. NORADIN, et al.** | ) ) ) | |
| Defendants. | ) | |

**PLAINTIFFS' JOINT MOTION TO COMPEL**
**DEFENDANT CITY OF CHICAGO TO PRODUCE DOCUMENTS**

While the parties have cooperatively resolved a number of written discovery issues, the

parties have reached impasse on a couple of outstanding disputes, making this motion to compel

necessary. First, Defendant City of Chicago ("City"), continues to maintain its position that

around 3,500 documents already in Plaintiffs' possession should be "clawed back." These

documents should be produced; both because they were improperly withheld by the City in this case, and because these documents were previously produced to Plaintiff Villa during the underlying criminal proceedings, waiving any privilege claim.

Second, Defendant City refuses to produce documents related to Plaintiff Edgardo Colon's status as a confidential informant. These documents are inherently relevant to Plaintiffs' underlying claims and should be produced.

Finally, the parties have also reached impasse on Plaintiffs' *Monell* discovery requests. Defendant City says that it will not produce *Monell*-related documents because they think its "a fishing expedition," and regardless, they want to bifurcate Plaintiff Villa's *Monell* claims for both discovery and trial. But the City has not filed any motion to bifurcate, and the types of documents Plaintiffs are request in support of their *Monell* claim, as this Court knows well, are relevant and should be produced during the normal course of discovery. *See, e.g.*, *Fields v. City of Chicago*, No. 10 C 1168, 2017 WL 4553411, at *3, (N.D. Ill. Oct. 12, 2017), *aff'd*, 981 F.3d 534 (7th Cir. 2020).

For all three issues, the Court should grant Plaintiff Villa's motion and compel Defendant City to produce the relevant discovery.

## BACKGROUND

As part of their initial production of emails, intended to be a faithful recreation of emails produced to Plaintiff Villa during his underlying criminal proceedings, Defendant City withheld around 3,500 documents and provided a privilege log. Ex. 1. Plaintiff Villa already possessed these documents, as explained in past filings, but Plaintiff Villa identified and sequestered these

same documents from his own production and has not yet produced them.[1] At a hearing before this Court on August 5, 2025, Defendant City represented that the 3500 or so withheld documents included "personal identifying information regarding officers," HIPAA/medical information related to officers, "very law enforcement sensitive" documents, and attorney-client privileged documents. Ex. 2 at 23-27. The Court instructed that there should be a process where the parties worked to redact the personally identifying information, medical information, and privileged information, and identify a smaller subset of documents that may require adjudication. *Id* at 31-32.

Plaintiffs issued their first joint set of written discovery requests to Defendant City on May 30, 2025. Ex. 3. Plaintiffs received Defendant City's responses on August 4, 2025 and, after reviewing them, requested on August 11 that the parties set aside time to meet and confer. The parties first met on August 27 and Defendant City maintained its position that all 3,500 or so documents it withheld were privileged. Plaintiffs agreed to review the privilege log again and continue conferring with Defendant City on the issue. Ex. 4. The parties also discussed Plaintiffs' request for documents related to the potential confidential informant/source status of Plaintiff Edgardo Colon, as well as key witnesses Destiny Rodriguez, Destiny Perez, Rene Vasquez, and Ruben Rodriguez. *Id*. Plaintiffs also noted that additional specific requests for documents related to confidential informants might arise as discovery proceeds. *Id*. Plaintiffs also agreed to review their position on *Monell* discovery. *Id*.

Plaintiffs followed up on the issues discussed during the initial meet and confer via email on September 8, 2025, stating Plaintiffs' position that Defendant City had improperly over

---

[1] There are around 100 documents identified by Defendant City in its privilege log that Plaintiffs have been unable to find in their possession.

3

designated documents as privileged and requesting that Defendant City provide an updated, narrowed, privilege log for Plaintiffs to consider. Ex. 5. Plaintiffs provided specific examples including that: (1) nearly one third of the documents identified as privileged were improperly designated on grounds of "officer privacy" or "personal"; (2) a repeated use of the unexplained "law enforcement privilege"; and (3) the apparent improper designation of certain communications as attorney-client. *Id.*

Following this initial meet and confer, Plaintiffs issued additional discovery requests, including additional specific *Monell* discovery requests on September 4, 2025 and September 9, 2025. Ex. 6; Ex. 7. Plaintiffs' *Monell* discovery requests seek Area 5 homicide files over a four-year period, as well as corresponding gang crimes documents, electronic communications, and related "Confidential RD" documents. Ex. 7.

On September 24, 2025, the parties conferred again. The parties cooperatively resolved several outstanding issues but reached impasse on the confidential informant documents. Ex. 8. The parties also discussed the withheld documents and agreed that some number of documents could be produced with proper redactions and under the operative protective order. *Id.* Plaintiffs reiterated their position that none of the withheld documents were privileged, and the parties therefore agreed that they are at an impasse regarding some subset of the documents.

Defendant City responded to Plaintiff Villa's *Monell*-related discovery requests on October 10, 2025. Ex. 9. But in doing so, Defendant City refused to produce documents.[2]

---

[2] To be sure, on October 10, Defendant City did produce 29 pages of screenshots from its FileMaker database. But producing just those limited screenshots, which are only from January to May 2012, is nowhere close to responsive to Plaintiff Villa's request for documents related to the FileMaker database, especially when Plaintiff Villa knows, based on previous productions, that there should be responsive documents in FileMaker through at least November 2013. Indeed, Plaintiff Villa requested "[a]ll documents related to the Lewis Homicide Investigation

Instead, they said, among other things, that each "request appears to be discovery on Plaintiffs' *Monell* claims, which were the subject of the City's previous Motions to Bifurcate Trial and Stay Discovery of *Monell* Claim (DOC 150 (Clay), DOC 144 (Colon))." *Id.* And thus, Defendant City explained, it intends to "file an amended motion to bifurcate and stay the proposed discovery on these claims in the consolidated cases." *Id.*

On October 15, 2025, the parties conferred yet again, this time about Defendant City's *Monell* responses and the status of the privilege log. For the *Monell* discovery, Defendant City confirmed that it would not produce any discovery pending its amended motion to bifurcate. For the privilege log, Defendant City explained that it does not have an updated privilege log and that it needed more time. Plaintiff Villa told Defendant City that, per the Court's instructions on the motion to compel deadline, he could not agree to more time and would file a motion to compel. As Plaintiff Villa told Defendant City, the documents on the privilege log—which have long been in Plaintiff's possession—have been sequestered pending the resolution of this issue, but that Plaintiff Villa's position remains that he should have full access to these documents.

## ARGUMENT

Federal Rule of Civil Procedure 26(b)(1) provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Relevance "has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue

---

stored within the FileMaker database" and "[a]ll documents relating to all Area 5 homicide investigations from January 1, 2010 to January 1, 2014 stored in the FileMaker database and/or otherwise created by, reviewed, approved, or otherwise accessed by Gang Investigation Division and/or Gang Enforcement Division personnel." Ex. 9 at 1, 4. As explained below, *infra* pp. 10-11, these documents are relevant and should be produced.

that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978); *see also Kodish v. Oakbrook Terrace Fire Protection Dist.*, 235 F.R.D. 447, 450 (N.D. Ill. Apr. 20, 2006) ("Requests for discovery are relevant if there is any possibility that the information sought may be relevant to the subject matter of the action."). "The burden rests upon the objecting party to show why a particular discovery request is improper." *Kodish*, 235 F.R.D. at 450. "In ruling on motions to compel discovery courts have consistently adopted a liberal interpretation of the discovery rules." *Wilstein v. San Tropai Condo. Master Ass'n*, 189 F.R.D. 371, 375 (N.D. Ill. Oct. 7, 1999) (internal quotations omitted).

### *Privilege Log*

During the pendency of Plaintiff Villa's post-trial proceedings, the Chicago Police Department produced to him hundreds of thousands of emails. At the time, Defendant City asserted no privilege over the documents or attempted to claw them back. As part of discovery in this case, Defendant City endeavored to re-produce all of the emails that were produced to Plaintiff Villa during those proceedings. Defendant City currently asserts a privilege over around 3500 or so emails that were produced to Plaintiff Villa during the criminal proceedings, and Plaintiff Villa, who has these emails in his possession, has currently sequestered those emails and has not yet produced them.

As an initial matter, Defendant City has waived any assertion of privilege over these documents, which they produced wholesale, without limitation, during the underlying criminal proceedings. *See Patrick v. City of Chicago*, 154 F.Supp.3d 705, 711 (N.D. Ill. Oct. 28, 2015) ("[I]nformation once disclosed to a party opponent waives the attorney-client privilege as to future proceedings."); *In re Consolidated Litig. Concerning Intern. Harvester's Disposition of Wisc. Steel*, 666 F. Supp. 1148, 1153 (N.D. Ill. 1987) (explaining that voluntary disclosure of

privileged attorney-client communications constitutes waiver of the privilege as to all other communications on the same subject). While Defendant City now asserts that it intends to "claw back" these documents, the privilege was long ago waived—and never asserted during the proceedings in which these documents were actually produced. It is far too late to un-ring that bell and attempt to assert some sort of privilege now.

In addition, Defendant City has over-designated documents as privileged. Notably, only half of the documents it withholds are identified as attorney-client materials. The other half are being withheld on a myriad of non-privileged grounds including: (1) "Officer Privacy/Personal" (1,405 documents); and (2) "Law Enforcement Privilege" (476 Documents). Ex. 1. Plus, even where Defendant City designates something as privileged on attorney-client grounds, it is unclear whether that privilege is properly being applied. For example, there are 339 documents with the subject "News Clips"—these emails do not appear to contain privileged communications and appear to often be sent between a Chicago Police officer and a civilian, or a non-attorney email account. *Id.* In this same vein, one email with the subject line "RE: Girl Scout Sunday Mass @ 930," sent from "mia.ogliore@chicagopolice.org" to "sparkle2@att.net," has been marked as an attorney client communication. In fact, there are currently twenty Girl Scouts-related emails currently being withheld on grounds of attorney-client privilege.[3] There are also emails between defendants in this case (for example, Gary Yamashiroya and Denis Walsh), without an attorney included, that have been withheld.

---

[3] While Defendant City may argue that these emails are irrelevant, that is not a basis for privilege. Nor can they be considered irrelevant—these emails are all emails that were produced to Plaintiff Villa during his underlying criminal proceedings and thus relate to this civil case.

7

Ultimately, "[t]he mere assertion of privilege is not enough; instead a party that seeks to invoke the attorney-client privilege has the burden of establishing all of its essential elements." *United States v. BDO Seidman*, 337 F.3d 802, 810 (7th Cir. 2003). Defendant City has repeatedly failed to meet that burden, giving the Court an independent reason to order the production of the documents. *See Surgery Ctr. at 900 N. Michigan Ave., LLC v. Am. Physicians Assurance Corp., Inc.*, 317 F.R.D. 620, 631–34 (N.D. Ill. 2016) (collecting cases explaining that the failure to produce an adequate privilege log can result in waiver of the privilege, thus ordering the defendants to produce the withheld documents listed in their log).

Plaintiffs have requested that Defendant City narrow their privilege log and the universe over which they are truly claiming privilege. So did the Court. Indeed, it has now been over two months since the Court asked Defendant City for "a relatively expeditious process" to fix the privilege log issue. Ex. 2 at 32:12. But as of the time of filing, Defendant City has not done so. Defendant City has waived its privilege over these documents and should be compelled to produce them.

### *Confidential Informant Files*

Plaintiffs seek any documents related to Plaintiff Edgardo Colon's status as a confidential informant and/or confidential source.[4] While there is a limited privilege to withhold the identity of a confidential informant, *Rovario v. United States*, 353 U.S. 53, 59-60 (1957), that privilege limits "only the identity of the informant," and is further limited because "if the identity of the informant is revealed, the privilege is destroyed," and "the privilege may be overcome where the

---

[4] Plaintiffs initially sought confidential informant documents related to several witnesses but have further narrowed their requests for purposes of this motion. Defendant City has not indicated whether any responsive files exist with respect to Plaintiff Colon, but Plaintiff Colon did act as a confidential informant.

informant's identity or communications of the informant are relevant and helpful…or essential to the fair determination of the cause of action." *United States v. Capitol Service, Inc.*, 89 F.R.D. 578, 584 (E.D. Wisc. Mar. 23, 1981). Courts in this District have permitted discovery into confidential informants. *See Heffernan v. City of Chicago*, 286 F.R.D. 332 (N.D. Ill. Aug. 17, 2012) (permitting discovery into the confidential informant file and a deposition of the informant in a lawsuit alleging an unlawful search because "defendants have not demonstrated that there is sufficient basis on which to conclude either that the claimed, unspecified threat to the informant's well-being either currently exists, or, even assuming it does, that the exacting protections imposed by the protective order…are insufficient to secure the interests being advanced by the defendants"); *United States v. Padilla*, 744 F. Supp. 1425, 1426-27 (N.D. Ill. Sept. 25, 1990) ("[T]he government's interest in confidentiality is outweighed by defendants' need for disclosure. There is no readily apparent threat to the safety of the informants if their identities are revealed. Moreover, the government does not contend that the confidentiality of these informants is critical to the success of ongoing investigations in other cases…defendants' ability to prepare an adequate defense could be severely impaired if the identity of the informants is not disclosed."); *Hampton v. Hanrahan*, 600 F.3d 600, 638 (7th Cir. 1979) ("[t]he assertion of informer's privilege by a law enforcement official defending against a civil suit for damages based on his own alleged official misconduct should be scrutinized closely") (*rev'd on other grounds*); *Krauser v. Scalise*, 1989 WL 158006 at *5 (Dec. 21, 1989) (granting plaintiff's motion to compel the disclosure of confidential informant); *Coleman-Johnson v. Chicago, Ill. Police Officers*, 1996 WL 66140 at *4 (N.D. Ill. Feb. 13, 1996) (granting plaintiffs' motion to compel and explaining that it "is persuaded the informer privilege can be accommodated by limiting identification of 'John Doe' to plaintiffs' attorneys only.").

9

At this juncture, Plaintiffs are not asking Defendant City to provide the identity of an otherwise unknown confidential informant but are instead seeking documents related to a known informant, Plaintiff Edgardo Colon. Because Plaintiff Colon's identity is known, and he himself is one of the parties requesting this information, the informant privilege simply does not apply. *Capitol Service, Inc.*, 89 F.R.D. at 584 (explaining that the informant privilege is destroyed if the identity of the informant is revealed). In addition, Plaintiffs anticipate that these documents may contain evidence showing that the CPD knew that Colon was an unreliable source. The government's interest in confidentiality is minimal here, given that Plaintiff Colon himself is requesting these documents, while Plaintiffs' need for the documents is significant. Defendant City should therefore be compelled to produce responsive documents.

### *Monell Discovery*

Plaintiffs' *Monell* claim is simple: the Chicago Police Department's practice of suppressing exculpatory information in undisclosed investigative files has a modern spin—the Chicago Police Department now routinely suppresses exculpatory and impeachment evidence in gang crimes investigative documents, electronic communications among investigators, and files pertaining to confidential drug busts which occur under confidential RD numbers. Plaintiffs issued *Monell* discovery to Defendants, both as part of their initial discovery requests on May 30, 2025, and an additional set of requests on September 4, 2025 and September 9, 2025. In particular, Plaintiffs seek four years of Area 5 homicide files, as well as corresponding gang crimes documents, electronic communications, and related "Confidential RD" documents associated with drug arrests.

In response, Defendant City says that it will not produce any *Monell*-related documents, including, but not limited to, documents stored in Defendant City's FileMaker database. On one

hand, they say looking for *Monell* documents is just "a fishing expedition that is highly unlikely to lead to the discovery of admissible or even relevant evidence." Ex. 9. On the other hand, Defendant City wants to postpone all *Monell* discovery (or any litigation on the *Monell* claims) until a first trial is completed for the Individual Defendants. *See* Dkt. 150 (Clay) (motion to bifurcate); Dkt. 155 (Clay) (denying the motion to bifurcate without prejudice). As Defendant City sees it, litigating the *Monell* claims alongside the Individual Defendants will result in unjust prejudice against the City.

But whatever Defendant City's argument may be, there is no motion to bifurcate on file. Not in this case; nor the consolidated cases. *See* Dkt. 155. And Defendant City has not moved to stay any discovery. In other words, Plaintiff Villa's *Monell* claims are very much live in this case. As such, Defendant City should produce all responsive documents.

Plus, this Court already knows that both arguments are wrong. A sample of files showing that the City has a continued practice of suppressing evidence in investigations is centrally relevant to Plaintiffs' motion claims. There are dozens of examples of analogues discovery in wrongful conviction cases in this District. For instance, in *Fields*, the City showed that this type of discovery is not some "fishing expedition." After the City was ordered to search for *Monell*-related discovery, *see Fields v. City of Chicago*, No. 10 C 1168, 2015 WL 13578989, at *5 (N.D. Ill. Apr. 7, 2015), the City's searches yielded sufficient evidence—so much so that it supported a jury verdict that the City had engaged in a practice of hiding exculpatory information, *Fields*, 2017 WL 4553411, at *3. In the same case, this Court also explained that allowing the plaintiff's *Monell* claim to proceed alongside his claims against individual officers was not prejudicial. *Id* at *13 (explaining how there "was sufficient overlap between the two sets of claims"). The Seventh Circuit affirmed. *See generally Fields v. City of Chicago*, 981 F.3d 534 (7th Cir. 2020). The

11

Court should simply apply the same reasoning here and reject Defendant City's attempt to avoid producing evidence that it continues to have a widespread practice of suppressing investigative information important to criminal cases.

**CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that this Court compel Defendant City to produce the withheld documents.

Dated: October 17, 2025

                    Respectfully submitted,

                    **ALEXANDER VILLA, TYRONE CLAY, EDGARDO COLON**

                    BY:    /s/ Jordan Poole
                           *One of Plaintiff Villa's Attorneys*

                           Jon Loevy
                           Steve Art
                           Anand Swaminathan
                           Jordan Poole
                           Brian Morris
                           LOEVY & LOEVY
                           311 N. Aberdeen, 3rd Floor
                           Chicago, Illinois 60607
                           (312) 243-5900
                           poole@loevy.com

                           Jennifer Blagg
                           Eric Bisby
                           1509 W. Berwyn Ave. Suite 201E
                           Chicago, Illinois 60640
                           (773) 859-0081
                           jennifer@blagglaw.net

                           Ashley Cohen
                           Jennifer Bonjean
                           Josh Morrison
                           **BONJEAN LAW GROUP, PLLC**
                           303 Van Brunt Street, 1st Floor

12

Brooklyn, NY 11231
Tel. 718-875-1850
ashley@bonjeanlaw.com

Paul K. Vickrey
Patrick F. Solon
Dylan M. Brown
**VITALE VICKREY NIRO SOLON & GASEY LLP**
311 S. Wacker Drive, Suite 2470
Chicago, IL 60606
Tel: (312) 236-0733
dbrown@vvnlaw.com

13