**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **ALEXANDER VILLA,** | ) | |
| | ) | |
| Plaintiff, | ) | Case No.: 25-CV-01968 |
| | ) | |
| v. | ) | The Honorable Matthew F. Kennelly |
| | ) | |
| **ANTHONY F. NORADIN, et al.** | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF VILLA'S MOTION FOR SANCTIONS AND RENEWED
MOTION TO COMPEL IMMEDIATE PRODUCTION OF DOCUMENTS**

Plaintiff Alexander Villa was wrongfully convicted of the December 29, 2011 murder of off-duty police officer Clifton Lewis. Villa was not charged until 2013, when third-party witness, Destiny Rodriguez, seemingly out of nowhere, stated that she overheard Villa confess to the crime more than a year earlier. The mystery of Rodriguez's unexplained, sudden statement implicating Villa has now been solved.

Villa has just learned during discovery in this civil case that only minutes prior to Rodriguez providing a statement incriminating him, Rodriguez's home was searched by Defendant Don Giuliano. Giuliano found drugs, drug paraphernalia, and ammunition in Rodriguez's apartment, but chose not to charge her. Instead, less than an hour later, Rodriguez provided a statement that ultimately led to Villa's wrongful conviction. None of this was known to Villa at his criminal trial, during his post-conviction proceedings, or, until last month, during this civil litigation. However, at minimum Defendant Giuliano and Defendant Franklin Park knew of this evidence, and they made a willful choice to withhold it from Villa during his criminal case and, with their defense counsel, during these civil proceedings. This is brazen misconduct.

1

Also unknown to Villa until recently, Defendant Giuliano actually wrote a report about his search of Rodriguez's home, what he found, why he went to her home, who he talked to while there, and the offenses for which Rodriguez could have been charged. That report was also suppressed throughout Plaintiff's criminal trial and post-conviction proceedings. Making matters worse, it has been suppressed throughout this civil case.

Throughout written discovery in this case, the Franklin Park Defendants produced only a single document related to Destiny Rodriguez: A police report written by Giuliano reflecting Rodriguez's statement implicating Villa. This report makes no mention of the drugs or ammunition Giuliano found in Rodriguez's possession minutes prior, or the decision not to charge her for those crimes. The Franklin Park Defendants consistently represented throughout discovery that they had no other responsive documents regarding Rodriguez in their possession. As this Court knows, Plaintiff recently filed a motion to compel the Franklin Park Defendants to produce additional documents related to Rodriguez after learning about Rodriguez's interactions with law enforcement following the deposition of another third-party, Rodriguez's ex-boyfriend.

Only after this Court granted Plaintiff's motion to compel did the Franklin Park Defendants produce the suppressed report documenting Giuliano's search of Rodriguez. This is bombshell evidence. It should have been produced in the criminal case. Instead, Rodriguez testified, unimpeached, that she came forward because Giuliano was a trusted friend, and because she no longer had to fear her abusive ex-boyfriend, who was purportedly friends with Villa. The document should have been produced at the start of this civil case without the need for a request. It should have been produced in response to Plaintiffs' initial discovery requests. It should have been produced in response to Plaintiffs' supplemental discovery requests. It should

2

have been produced immediately after Plaintiff asked for it, without the need for a motion. The fact that it was not is reason enough to impose sanctions here.

But Defendants' conduct here is even more problematic than that. With the production of the bombshell report, Defendants produced metadata, which shows that they reviewed this document and chose not to produce it multiple times—when the case was filed, throughout initial written discovery, when Plaintiff issued supplemental written discovery requesting information about benefits given to Rodriguez, and when Defendants signed under oath that no additional responsive documents existed. The metadata also shows that Defendants reviewed the suppressed report throughout the pendency of Villa's criminal and post-conviction proceedings. In a recent meet and confer with the Defendants, counsel for Franklin Park and Giuliano admitted that he reviewed this report during discovery in this case, and he had decided it was not "responsive." Any attorney should know that this report—obviously suppressed and critical evidence in the underlying criminal case—should have been produced immediately in the civil litigation.

This evidence was suppressed throughout Plaintiff's criminal proceedings. Plaintiff Villa will show later in the case that the suppression of this evidence was a due process violation that establishes Defendants' liability and caused his wrongful conviction. He has been hampered in making that case by the continued suppression of this evidence during this civil case, which occurred because of the misconduct and willful obfuscation of Defendants' and their counsel. Because of this misconduct, Plaintiff brings this motion for sanctions and renewed motion to compel and asks this Court to order the following relief:

1. Order Defendant Franklin Park and Giuliano to immediately produce all documentary evidence in their possession relating to Rodriguez, in whatever form it exists,

including electronic communications, and to immediately update their interrogatory responses to disclose the existence of communications and interactions with Rodriguez that are not memorialized—in whole or in part—in documentary form.

2. Order Defendant Franklin Park and Giuliano to explain why these documents were not provided in Villa's criminal and post-conviction proceedings or previously in these civil proceedings.

3. Impose any sanctions against Defendant Franklin Park and Giuliano that the Court deems proper given the circumstances.

4. Order all other Defendants to produce and disclose in response to interrogatories all communications that they or any of their agents had with Defendants Franklin Park, Giuliano, or any of Franklin Park's agents regarding Rodriguez or Giuliano's interactions with her. Defendants, including the City of Chicago, have not confirmed that they have conducted a reasonable search for such information. Instead, they have merely confirmed that they are not aware of any documents on that subject among those they have already produced.

Villa suspects strongly that Defendants Franklin Park and Giuliano caught Destiny Rodriguez with drugs and ammunition at a time when Rodriguez was down on her luck and then conspired with the other Defendants to induce her to make a false statement implicating Villa. Villa thinks that the record warrants a vigorous investigation, compelled by this Court.

**BACKGROUND**

At Plaintiff's trial, Destiny Rodriguez testified that she overheard Plaintiff, in conversation with her then-boyfriend, Rene Vasquez, admit to shooting Officer Lewis in the early morning hours after the homicide. Rodriguez first gave a statement about this supposed

4

conversation over a year after it allegedly occurred, to Defendant Giuliano and shortly thereafter, to Defendant Noradin of the Chicago Police Department. Defendant Giuliano memorialized Rodriguez's statement in a report. Ex. 1. Plaintiff was charged with the murder soon thereafter. At trial, Rodriguez was asked questions about her interactions with Defendant Giuliano and the Franklin Park Police Department, her criminal background, and her motivations for coming forward over a year later. At no point did Rodriguez indicate that she had been caught with drugs and ammunition shortly before providing her statement to Defendants—instead she testified that she "just came out and just explained to him what I had knew [sic]" because he was "a trusted officer in the neighborhood," and they would often chat while she walked her dog. Ex. 2 (Destiny Rodriguez Trial Testimony) at RR-36:16-18; RR-58-59. Because Plaintiff did not have the report that showed otherwise, the jury was left with the impression that Rodriguez was simply a Good Samaritan, coming forward despite her fear to help solve a murder.

During the deposition of Vasquez—Rodriguez's ex-boyfriend—he revealed that he believed Rodriguez had been arrested right around the same time she provided her statement implicating Plaintiff, and that she had been in other trouble, including a pending eviction, at the time.[1] Vasquez also testified that Rodriguez's statement was false. He explained that he had seen Villa weeks after the murder and asked him why he was out in public given Defendants' high-pressure tactics to find and frame him. Villa denied committing the crime. As a result of Vasquez's testimony regarding Rodriguez, Plaintiff reached out to counsel for the Franklin Park Defendants on October 31, 2025, requesting that they produce all documents related to these potential interactions between Rodriguez and Defendants, noting that these documents would be responsive to a number of Plaintiff's original discovery requests. Ex. 3. Over the course of

---

[1] During the civil litigation, Plaintiff sought and obtained these eviction records.

several emails and phone calls, counsel for the Franklin Park Defendants repeatedly asserted that he did not believe that such documents would be responsive to Plaintiff's discovery requests. Ex. 4. Counsel for the Franklin Park Defendants also repeatedly failed to confirm or deny whether any such documents existed at all. *Id.* As a result, Plaintiff filed a brief motion to compel on the issue, citing Plaintiff's discovery requests. Dkt. 186.

This Court heard that motion to compel on November 24, 2025 at which point counsel for the Franklin Park Defendants represented that he "got confirmation…three and a half minutes ago" that his client had one document but that "there are no other documents." Ex. 5 (Nov. 24, 2025 Hearing Transcript) at 9:4-10. The Court, after reviewing Plaintiff's motion and discovery requests, agreed that the documents sought by Plaintiff were responsive to Plaintiffs' requests and ordered the Franklin Park Defendants to produce the document in its possession.

After Plaintiff followed up with counsel for the Franklin Park Defendants, counsel produced the document. Ex. 6.  The report was a bombshell. As previously described, it revealed that Rodriguez had not come forward, as she testified, because of a guilty conscience, to give a statement to a police officer she knew and trusted, but rather because that same police officer had found a significant amount of drugs and ammunition her home, just minutes prior, but failed to arrest her. It goes without saying that this is evidence that should have been produced to Plaintiff at his criminal trial, and should have been produced, without issue, in this civil litigation.

Even more alarming, however, is what happened next. The report itself made reference to *two* additional documents—an evidence technician report documenting the contraband taken from Rodriguez's house and a consent to search form apparently signed by Rodriguez and her then-girlfriend who also resided in the apartment. Plaintiff immediately followed up with defense counsel asking for these two additional documents, and the metadata related to the newly

6

discovered suppressed report. Ex. 7. Defense counsel, following an additional email from Plaintiff cancelling the forthcoming deposition of Rodriguez and alerting all the parties to the issue, produced the evidence technician report and the metadata. Ex. 8, 9. Defense counsel represented that the consent to search form had been destroyed in 2013. Ex. 10. The metadata itself revealed that the Franklin Park Defendants and their counsel had made repeated, material, misrepresentations to Plaintiff and this Court.

The metadata reveals that the suppressed report was accessed dozens of times by the Franklin Park Defendants and their counsel on October 10, 2025, September 22, 2025, and March 13, 2025, and over two hundred times in general.[2] Ex. 8. These dates are significant. Plaintiff served the Franklin Park Defendants with his complaint on March 11, 2025. Dkt. 13. Two days later, the Franklin Park Defendants pulled up this report twenty times. The Franklin Park Defendants again accessed this report nine times, on September 22, 2025, presumably while concocting their responses to Plaintiff's second set of discovery requests which focused on any benefits or assistance the Franklin Park Defendants provided Rodriguez. Most damning, the Franklin Park Defendants accessed the report nine more times on October 10, 2025, the day the Franklin Park police chief signed, under oath, that he had conducted a reasonable inquiry and that no responsive documents existed to Plaintiff's inquiries about benefits or assistance provided to Rodriguez. Ex. 11. There is no question that the Franklin Park Defendants and their defense counsel knew this document (indeed, *documents*) existed, and willfully obfuscated and withheld them.

---

[2] The report was also accessed throughout the pendency of Plaintiff's criminal and post-conviction proceedings in December 2013, March 2014, July 2020, and November 2022. The metadata reveals also that at least a dozen different users accessed the suppressed report but does not specify which individuals looked at the report. As part of this motion, Plaintiff requests that the Franklin Park Defendants produce this identifying information.

This was confirmed during the parties' December 18, 2025 meet and confer with counsel for the Franklin Park Defendants at which he confirmed that he had known about the existence of the suppressed report throughout the pendency of discovery in this case and had not produced it because he did not consider it responsive to Plaintiff's discovery requests.

Plaintiff's discovery requests are numerous, and because this Court had the opportunity to review a number of them at the previous hearing—and agreed that this document was clearly responsive—Plaintiff does not belabor the specific requests here but attaches them and the Franklin Park Defendants' responses as an exhibit. Ex. 12. It is worth noting, however, that the Franklin Park Defendants' responses are at best misleading, and at worst, flatly untrue. *Id.*

In addition, following the revelation of the suppressed report, Plaintiff requested that all Defendants confirm that they have produced all documents related to Destiny Rodriguez in their possession. Ex. 13. While Defendants have uniformly responded that they have no other responsive documents in their possession, Plaintiff is rightfully concerned that proper searches for these documents have not been conducted. To put it simply, it seems highly unlikely that the Franklin Park Defendants were the only party that knew about the search of Rodriguez's apartment and the contraband found there. Indeed, Defendant Noradin took her statement on March 12, 2012, only several hours after the search was conducted, and Defendant Giuliano was present. Defendant Noradin himself also recommended that Defendant Giuliano be given an award and other accommodations after Villa was charged with Officer Lewis's murder. Ex. 14 (Noradin Email). Defendants Noradin and Giuliano remained in contact with Rodriguez at least up through trial.[3]

---

[3] Immediately prior to the filing of this motion, the Franklin Park Defendants produced still more documents related to Destiny Rodriguez that had not previously been produced. Plaintiff's counsel has not had a full opportunity to review them at this point, and will address them, if necessary, in further briefing or at argument.

**ARGUMENT**

As a result of these revelations, Plaintiff now asks this Court to grant his requested relief. Plaintiff asks this Court to: 1) order the Franklin Park Defendants to produce all documentary evidence relating to Rodriguez and to update their discovery responses reflecting previously undisclosed interactions with Rodriguez; 2) order the Franklin Park Defendants to explain why they withheld these documents; 3) impose any sanctions the Court deems proper against the Franklin Park Defendants; and 4) order Defendants to complete a comprehensive, thorough search for all communications, including text messages and emails from non-work emails, between their clients, the Franklin Park Police Department, Defendant Don Giuliano, and/or Destiny Rodriguez and to amend their written interrogatory responses to reflect any additional information about Destiny Rodriguez known to them, including communications with or about her.

I.      **This Court Should Order the Franklin Park Defendants to Supplement their Production and Responses**

As an initial matter, this Court should order the Franklin Park Defendants to produce all documentary evidence related to Destiny Rodriguez in their possession and update their interrogatory responses to reflect all interactions they have had with Rodriguez, up until the present day. This request would normally not require a court order. Parties are presumed to be fulsome, accurate, and truthful when responding to discovery. The Franklin Park Defendants, however, have shown themselves to be unreliable.

Not only does the metadata show that the Franklin Park Defendants made repeated, conscious choices to withhold evidence from Plaintiff, but defense counsel has also made material misrepresentations to this Court about documents related to Rodriguez. As described above, at the most recent hearing, defense counsel for the Franklin Park Defendants represented

9

that he had confirmed—only minutes prior to the hearing—that his client had one report in its possession related to Destiny Rodriguez. Defense counsel had known, however, for months about the suppressed report related to Rodriguez. And that suppressed report itself showed that there were at least two other documents in the Franklin Park Defendants' possession related to Rodriguez and Giuliano's search of her apartment—the evidence technician report and the consent to search form. These were not immediately disclosed and were produced only after Plaintiff's counsel reviewed the suppressed report and learned that there were *more* documents in Franklin Park's possession. Indeed, as described *supra* in n.3, the Franklin Park Defendants have, just an hour ago, produced even more documents related to Destiny Rodriguez.

Similarly, the Franklin Park Defendants' discovery responses make no mention of Giuliano's interaction with Rodriguez that night in relation to the drugs and ammunition in her apartment. Instead, the Franklin Park Defendants repeatedly state that Giuliano interacted with Rodriguez only when she gave her statement implicating Villa, and in the lead up to her grand jury and trial testimony. Ex. 12. These are material misrepresentations. Not only do these responses not detail Giuliano's interaction with Rodriguez at her apartment just minutes prior to her giving a statement implicating Villa, they also do not detail other interactions that Giuliano likely had with Rodriguez prior to this specific date. How, for instance, did Giuliano end up at Rodriguez's apartment that night? Had he ever spoken with her prior? It seems likely, given that he chose not to bring charges against her and brought her in to give a statement implicating Villa instead. Indeed, Rodriguez herself testified at trial that Giuliano was a trusted officer that she routinely spoke with in the neighborhood. And the same third-party witness that revealed Rodriguez had previously unknown interactions with the Franklin Park Defendants also indicated he believed Giuliano was a friend of the Rodriguez family.

10

Plaintiff is entitled to this discovery and because the Franklin Park Defendants have routinely failed to meet their discovery obligations of their own accord, Plaintiff respectfully requests this Court order the Franklin Park Defendants to comply.

## II. This Court Should Order the Franklin Park Defendants to Explain their Misconduct

Currently, Plaintiff knows only that the Franklin Park Defendants withheld evidence from him for over a decade, and that defense counsel in this civil case withheld it because he determined it was not "responsive." Plaintiff is entitled to a full accounting, under oath, of the decisions made by the Franklin Park Defendants and their counsel, to withhold such obviously relevant and critical information. Such information might shed light on a variety of important topics—who else knew about this suppressed evidence, why it was withheld during the criminal proceedings and who made that decision, and the relationship between the Franklin Park Defendants and Destiny Rodriguez, among other things.

Plaintiff also requests, as described *supra* n. 2, that this Court order the Franklin Park Defendants to produce information showing who, exactly, accessed the report and when. Right now, the metadata produced by the Franklin Park Defendants shows alpha-numeric usernames, rather than the names of specific individuals. This information is critical to understanding who specifically accessed this suppressed report and at what time. In particular, it might show that individuals outside of Franklin Park, such as Defendant Noradin of the Chicago Police Department, accessed the report and participated in suppressing it. Or it might show that high-level decisionmakers within Franklin Park reviewed the report and chose to withhold it. This information is directly related to Plaintiff's claims against Defendants.

### III. This Court Should Impose Sanctions Under Rule 37

This Court can and should impose sanctions against the Franklin Park Defendants for their willful misconduct during discovery. Federal Rule of Civil Procedure 37 contemplates sanctions in several scenarios, including when a party "fails to obey an order to provide or permit discovery" and when a party "fails to provide information or identify a witness." Fed. R. Civ. P. Rule 37(b)(2)(A), (c)(1). In the event a party fails to obey an order to provide discovery, the Court "may issue further just orders," including:

> (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
> (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
> (iii) striking pleadings in whole or in part;
> (iv) staying further proceedings until the order is obeyed;
> (v) dismissing the action or proceeding in whole or in part;
> (vi) rendering a default judgment against the disobedient party.

Fed. R. Civ. P. Rule 37(b)(2)(A).

When a party fails to disclose or supplement, "the party is not allowed to use that information…to supply evidence on a motion, at a hearing, or at a trial," and, the Court, may also:

> (A) order payment of the reasonable expenses, including attorney's fees, caused by the failure;
> (B) inform the jury of the party's failure; and
> (C) impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)-(vi).

Fed. R. Civ. P. 37(c)(1).

Here, the Franklin Park Defendants both failed to obey this Court's order to compel discovery when it continued to withhold documents (the evidence technician report and the consent to search form, as well as additional documents just disclosed today) following Plaintiff's motion to compel and represented that only one responsive document existed. In addition, the Franklin Park Defendants repeatedly—and intentionally—withheld the

12

suppressed report throughout discovery, swearing repeatedly under oath that no other documents or information existed.

"A trial court determining the appropriate sanction under Rule 37 or any other provision of the Federal Rules must ensure that the sanction is proportionate to the infraction and has a considerable degree of discretion in tailoring the sanction to the wrong." *Wilson v. Sundstrand Corp*, 2003 WL 29938 at *4 (N.D. Ill. Jan. 2, 2003) (Kennelly, J.) (citing *Sherrod v. Lingle*, 223 F.3d 605, 612) (7th Cir. 2000); *Salgado by Salgado v. General Motors Corp.*, 150 F.3d 735, 740 (7th Cir. 1998)). In this case, given the continued and willful obfuscation by the Franklin Park Defendants, this Court should determine a proper sanction to impose. Because the Franklin Park Defendants withheld the suppressed report and related evidence, Villa was wrongfully convicted of a crime he did not commit, and because the Franklin Park Defendants continued to withhold it during this civil litigation, Villa has been stymied in his pursuit of justice. Villa respectfully requests this Court sanction such misconduct.

IV. **This Court Should Order All Defendants to Conduct a Comprehensive Search Related to Destiny Rodriguez and the Franklin Park Defendants**

With respect to the other Defendants, Plaintiff has good cause to believe that other Defendants must have had communications regarding the circumstances of Rodriguez's statement to the Franklin Park Defendants, and those communications have not been disclosed.[4] Consider that Rodriguez became the star witness against Villa at trial, and based on the record developed before last month, she seemed to have materialized out of nowhere. Now we know that she received incentives and avoided charges shortly before her statement. It is impossible to imagine that none of the other Defendants or their agents had any communication about

---

[4] An email produced by the Franklin Park Defendants today suggests that there are additional communications between Defendants about Rodriguez. Ex. 15.

Rodriguez with the Franklin Park Defendants. Those communications if written must be produced in response to Plaintiffs' Rule 34 requests for production, and if oral must be documented in Defendants interrogatory responses.

Following Villa's request that all Defendants produce documents related to Rodriguez, each Defendant represented that they had none other than what had previously been produced. During a meet and confer on the subject, it became clear to Plaintiff's counsel that defense counsel was representing only that there were no documents related to Rodriguez's interactions with Franklin Park *in the documents that had already been produced*. But that is not the question. Instead, the question is whether Defendants have searched for and inquired about communications regarding Rodriguez *that have not been disclosed already*. Apparently not. Because of the importance of this evidence, this Court should order all Defendants to conduct a comprehensive inquiry—for documented and oral communications, including a search of Defendants' ESI—for documents relating to Rodriguez, and particularly for interactions with the Franklin Park Defendants about Rodriguez.

Dated: January 6, 2026

Respectfully submitted,

**ALEXANDER VILLA**

BY:   /s/ Jordan Poole
*One of Plaintiff's Attorneys*

Jon Loevy
Steve Art
Anand Swaminathan
Jordan Poole
Brian Morris
LOEVY & LOEVY
311 N. Aberdeen, 3rd Floor
Chicago, Illinois 60607
(312) 243-5900
poole@loevy.com

14

Jennifer Blagg
Eric Bisby
1509 W. Berwyn Ave. Suite 201E
Chicago, Illinois 60640
(773) 859-0081
jennifer@blagglaw.net

15